The opinion of the Court was delivered by
Gibson, C. J.
The sum of the few authorities which bear on the point before us, is given in Cruise’s Digest, Tit. 24, § 15, where it is said that the use of a way must be according to the grant or the occasion of it, and not exceed it; so that a right of way over another’s ground to a particular place will not justify the use of it to go beyond that place. For this is cited Howel v. King, (1 Mod. 190,) and Lawton v. Ward, (1 Ld. Raym. 75,) which bear a considerable resemblance to the present case. In the former of them A. having a right of way over B.’s ground to Blackacre, drove his cattle not only to Blackacre, but to a place beyond it; and it was argued, that when they were at Blackacre he might drive them whither he would. On the other side it was urged, that if such were the law, A. might purchase any indefinite number of acres adjoining Blackacre, by which the grantor of the way might be entirely deprived of the benefit of his land; and that as prescription presupposes a grant, it ought to be continued according to the intent of its original creation; to which the Court assented, and gave judgment accordingly. Were the defendant the grantee of an easement, this principle would be decisive of our case; but he is the owner of the soil subject to an easement granted by his predecessor to the other side, and consequently the owner of all the ground, over which he passes in going from the street to the termination in dispute; and the difficulty is to understand how an injury is done to the grantee by any use of the grantor’s own soil, which is not an actual disturbance of the easement. I have found no authority for what struck me, in the course of the argument, as being a tenable position, that the grant of a way passes the whole use of it, except where a right of participation by the grantor is reserved in terms; nor do I mean to intimate, that the law would be so held, were the question now to be decided. For myself, however, I may remark, that agreeably to the rule which requires a grant to be interpreted most beneficially for the grantee, a strong argument might be made for the affirmative, inasmuch as exclusive enjoyment is more beneficial than mere participation, especially in a way which the grantee is to repair. In the absence of special provision in the grant, questions of this sort *334 must, perhaps, depend on the nature of the way and the degree of possession necessary to its enjoyment. But, not to insist on that, it is ' certain that the ungranted residue of a right of way may be annexed to a particular messuage or close, either by express stipulation or necessary implication, according to the occasion of the grant. An instance of this might be found in the disposal of houses surrounding a court, originally destined to be a common avenue to them, in which it would be sufficiently obvious from the disposition of the property, that the right of way had been appended to the houses and not to the owner of them. By the act of laying out the ground as a court, it would be allotted to the houses intended to adjoin it, so as to pass with them as an appurtenance; and the right of the owner would be correspondingly qualified by the nature of the use to which it was dedicated. Sales of the houses would successively abridge it, till it were ultimately extinguished along with his property in the last of them, when the purchasers might, by common consent, bar the entrance against his person, notwithstanding his legal title, just as they might bar it against a stranger. During his ownership of but a part of the property, he would be entitled to no privilege that he had not originally annexed to it; nor could his right to use the court as a thoroughfare to a messuage or close adjoining him on the further side, be greater than that of any of his grantees. Is not that the case before us ? The plaintiff and the defendant derive their titles respectively from the owner of a larger lot, of which the premises were parcel; on the one extremity of which stood the Indian Queen tavern with its appendances, and on the other a house in the tenure of a Miss Clinton. This house was a distinct tenement, and bounded in the rear by the stable wall of the tavern. Of the ground between the house and the tavern, Smock from whom the plaintiff derives his title, purchased a part for the site of a house, bounded in the rear also by the stable wall, and on the side next to Miss Clinton’s house, by a line passing at a certain distance from it to the street, the intervening space, to the depth of the front building, being left open for an alley to be used in common. No part of the stable adjoined the alley, the entrance to it being from another street, and in the rear of the whole. In this state of the premises Smock built the house owned by the plaintiff; and we have, therefore, two houses on an alley as the common easement of both, which was ostensibly designed in its creation to be subservient to no other part of the property; for the blind wall of the stable, which was a durable structure, would indicate to the eye of a purchaser, that it was designed for a permanent barrier against admittance on that side; so that in every material respect, the case corresponds to that of the houses on a court. It is plain, therefore, that to make the alley an appurtenance to what it was not at the time of the purchase, would be a fraud upon the contract. The intent of the parties is observable, however, not merely in the condition of the premises, as the *335 basis of the agreement, but in the terms of the conveyance. Smock ■was to have the full and free privilege of ingress, egress and regress; to which end, the alley was to be perpetually open between the lot granted and the house reserved. This shows to a reasonable intent, that the enjoyment of the alley was to be by the tenants of the premises particularly named; that the grantor, though owner of the soil, reserved no right to the alley, but what was incident to the ownership of his house; and that in this respect he put his right exactly on a footing with that of his grantee as a co-tenant. If so, the principle of Howel v. King and Lawton v. Ward is applicable to it with decisive effect.
But again, not to insist on the word ‘ free,’ which was held in Smith v. Kempe, (2 Salk. 637,) to pass an exclusive right of fishery, the word 4 full’ was evidently designed to signify not only a community, but an equality of enjoyment, both in the manner and the measure of it; consequently, if the defendant might use the alley as a way to his stable, by breaking through the wall, so might the plaintiff use it in subservience to any adjoining close, which it might happen that he could approach from the termination of the alley over his own ground; and the principle indicated in the two cases cited is, therefore, equally applicable to both. But the plaintiff’s enjoyment, so far from being full in any sense of the word, would be actually hindered, if his servants or children were exposed to the danger of being trampled upon by horses, or annoyed by the transportation of ordure. These would present an actual impediment to the free use of the alley secured to him by the conveyance. Having regard, then, either to the nature of the occasion or the terms of the grant, it seems clear, that the alley was devoted to the ordinary purposes of the houses; and that the defendant could not lawfully pass with his horses through it, or use it as a common footway to his stable.
Judgment for plaintiff generally.
*337 CASES IN THE SUPREME COURT OK PENNSYLVANIA. EASTERN DISTRICT, MARCH TERM, 1836.