# THE SUPREME COURT

5ws129
136 656

OF

# PENNSYLVANIA.

EASTERN DISTRICT, MARCH TERM, 1843.

## Jamison *against* M'Credy.

Two tenants in common, owners of 12 acres of ground, through which they had dug a race or canal from the river Schuylkill and divided the property by a boundary crossing the canal, reserving to each his heirs and assigns the common use and privilege of the canal or race as thereafter mentioned. By a subsequent clause they declared the same should be and remain for the common use and privilege of the respective parties, their heirs and assigns, tenants and occupiers of the respective lots of ground, through which the same passed, as a passage for scows or boats and rafts and for the introduction of the Schuylkill water from the dam for the use of the respective premises, but neither of them their heirs or assigns should at any time thereafter use more than one full equal half part of the water power of the said river, to which they previously were jointly entitled, nor would they, their heirs, &c. put or suffer or permit to be put thereon any boat, scow or raft of larger dimensions than would admit another of equal dimensions freely to pass it; and that neither of them their heirs, &c. should or would permit or suffer the water or water power, to which they were respectively entitled as aforesaid, to be used or applied otherwise than upon their respective lots, nor carry on or permit or suffer to be carried on upon the same lots the manufacture of gunpowder or any part of the process of the manufacture of that article.

*Held*, 1. That this deed did not give to a party the right to carry coal along the canal and load it on his half of the premises for the supply of a steam-mill occupied by him, situated on another and distinct lot in the neighbourhood.

2. That the privilege of the canal under this partition was not a personal one, but appurtenant to the property divided.

v. — 17                                                                                   (129)

[Jamison v. M'Credy.]

3. That in a suit for a misuser of the privilege, it is no answer that the plaintiff was guilty of a similar misuser.

ERROR to the Common Pleas of *Montgomery* county, where an action on the case was brought by Bernard M'Credy against Samuel Jamison, in which a verdict and judgment were rendered for the plaintiff.

Samuel R. Wood and the plaintiff, M'Credy, were tenants in common of the Norristown Mills and about 12 acres of ground. Being desirous of dividing the property, they made a deed of partition on the 30th of January 1826, on the construction of which the present question arose. Before its execution they had cut a race or canal through the property, and in the deed of partition they marked out and established a boundary across the race by which M'Credy took the upper part of the canal and Wood the lower part. Subsequently Wood's interest was sold by the sheriff to John Savage, who died, and his executors leased it to the defendant Jamison. In addition to this property, Jamison rented a steam-mill situate on other ground in the neighbourhood, and after notice from the plaintiff hauled to this mill coal brought along the canal in boats and landed from the boats on Jamison's portion of the 12 acres. The plaintiff alleged that this was a misuser of the canal; the defendant not being authorized to bring in boats along the canal any coal except what was used on the premises contained in the deed. It was proved on the part of the defendant that M'Credy unloaded lumber and everything he wanted on his premises, and supplied in this way with coal some of his hands who did not live in his houses.

By the above-mentioned deed of partition of the 30th of January 1826, the parties thereto, after certain recitals, made partition and division between them of the premises therein described, being a grist-mill, saw-mill, and tract of land situate in the borough of Norristown, bounded by the river Schuylkill, by lands of Mathias Holstein and others, containing 14 acres and 20 perches, each allotting and assigning to the other, in fee, his separate portion thereof, in severalty—Samuel R. Wood reserving, on his part, as follows: " excepting and always reserving nevertheless, unto the said Samuel R. Wood, his heirs and assigns, the one full equal half of all the water and water rights of the river Schuylkill, to which they the said parties hereto at and immediately before the execution of these presents were jointly entitled, and excepting and reserving also to the said Samuel R. Wood, his heirs and assigns, the common use and privilege of the canal or race"—and Bernard M'Credy and Martha his wife, on their part, reserving as follows: " excepting and reserving nevertheless, unto the said Bernard M'Credy, his heirs and assigns, the one full equal half part of all the water and water rights of the river Schuylkill, to which they the said parties hereto at and immediately before the

[Jamison v. M'Credy.]

execution of these presents were jointly entitled, and excepting and reserving also to the said Bernard M'Credy, his heirs and assigns, the common use and privilege of the canal or race, as hereinafter mentioned." And after the usual clause of warranty, the parties covenant and agree as follows:

"And they, the said Samuel R. Wood and Bernard M'Credy, for themselves, their respective heirs, executors, administrators and assigns, do hereby mutually covenant and agree with each other in manner following: that is to say, That they, the said Samuel R. Wood and Bernard M'Credy, their respective heirs and assigns, at their equal and joint expense, shall and will cause the canal or race through their respective lots from the dam to De Kalb street, to be widened so as to take in one half of the river Schuylkill when the water thereof is at its lowest stage, and to be walled from the bottom to the height of six inches above the level of the water in the dam, which said canal or race so widened with the head gates thereto belonging, shall at all times for ever be kept in good order at the equal and joint expense of the said Samuel R. Wood and Bernard M'Credy, their respective heirs and assigns, and the same shall be and remain for the common use and privilege of the said Samuel R. Wood and Bernard M'Credy, their respective heirs and assigns, owners, tenants and occupiers of their respective lots of ground through which the said canal or race passes, as a passage for scows or boats and rafts, and for the introduction of the Schuylkill water from the dam for the use of their respective premises, but neither of them, the said Samuel R. Wood or Bernard M'Credy, their respective heirs or assigns, shall at any time hereafter use more than one full equal half part of the water power of the said river, to which they, previous to the execution of these presents, were jointly entitled, nor will they, the said parties hereto, their respective heirs or assigns, at any time hereafter, put or suffer or permit to be put on the said canal or race, any boat, scow, or raft of larger dimensions, than will admit another of equal dimensions freely to pass it, and it is further mutually agreed by and between the said parties hereto, that neither of them, their respective heirs or assigns, shall or will at any time or times hereafter, permit or suffer the water or water power to which they respectively are entitled as aforesaid, to be used or applied otherwise than upon their said respective lots, between the dam and De Kalb street, nor will they, the said parties, their respective heirs or assigns, at any time or times hereafter, carry on, or permit, or suffer to be carried on upon the same lots, the manufacture of gunpowder, or any part of the process of the manufacture of that article."

The court below (BURNSIDE, President) charged the jury as follows:

These covenants run with the land, and the great principle which will govern their construction is the intention of the parties.

[Jamison v. M'Credy.]

What was the object in mutually digging and maintaining this large race?—It was, in the opinion of the court, for the use of the water-power on the lots. The race had another object, that it should be used as a navigation for all necessary purposes connected with the lots for the. use of the owners in the occupation of the lots, to use scows, boats and rafts, which may be necessary for the owners of the lots, tenants and occupiers thereof. The defendant takes the broad ground, and contends they have a right to use the race for all purposes of navigation, and to convert it into a canal for all navigable purposes. To this construction the court cannot concede. Its first object was a race for water-power. Its second object was a canal for all purposes connected with the lots and the works thereon. M'Credy is to be at half the expense of keeping up the race. Could he ever have agreed to that if the race was to be changed into coal navigation? Besides, the race is not calculated for that purpose; the gates must be shut, and kept shut, when there is a rise in the river. Suppose Jamison was not the renter of the Savage lot, could he use this race to carry coal to the steam mill? Most certainly he could not. Could Jamison lease his steam mill and give his lessee a right to bring coal down the race? Assuredly he could not. Then why shall he have the privilege? Because he is the renter of the Savage lot, shall he convert the race into a purpose not within the covenants or intention of the grant? It is contended by the defendant that there is no restriction against a coal-yard for general purposes, and only a restriction against erecting powder mills. This is true. But to convert the race into a canal for the purpose of coal navigation, besides what is necessary for the use of the lots, is, in the opinion of the court, changing the whole nature of the grant. If you find, and it is not disputed, that the defendant Jamison used this navigation for the purpose of supplying a steam mill not on the premises, it is a misuser of the grant and partition between the parties, for which an action on the case will lie. This construction is necessary for the protection of the owner of the lower lot. As to the damages, that is for you. It is not an action for heavy damages. It is an action to settle the law: to have the rights of the parties defined. You will judge of it.

The defendant excepted to the charge.

Errors assigned:

1. The court erred and misled the jury in charging them as follows: "Suppose Jamison was not the renter of the Savage lot, could he use this race to carry coal to the steam mill? Most certainly he could not. Could Jamison lease his steam mill and give his lessee a right to bring coal down the race? Assuredly he could not. It is contended by the defendant that there is no restriction against a coal-yard for general purposes, and only a restriction against erecting powder mills. This is true. But to convert the race into a canal for the purpose of coal navigation,

[Jamison v. M'Credy.]

besides what is necessary for the use of the lots, is, in the opinion of the court, changing the whole nature of the grant. If you find, (and it is not disputed,) that defendant Jamison used this navigation for the purpose of supplying a steam mill not on the premises, it is a misuser of the grant and partition between the parties for which an action on the case will lie. This construction is necessary for the protection of the owner of the lot."

2. The court, in their charge to the jury, gave a wrong construction to the deed of partition in evidence.

*Freedley* and *J. W. Ashmead*, for the plaintiff in error.

It is not important now to consider the evidence returned with the record, because the great question, after all, is the construction of the deed of partition. We may, however, be suffered to remark, that upon the evidence which appears to have been given at the trial, it is difficult to understand how the plaintiff obtained a verdict at all ; for M'Credy used the canal for the very same purposes to which it was applied by Jamison, and of which he now complains. It was proved that Jamison brought in the boats used upon this canal, coal, which he afterwards hauled to and used upon his steam mill not upon the premises. The cross-examination of the first witness offered by M'Credy, showed that " M'Credy unloads lumber and everything he wants there ; had some hands who did not live in his houses ; supplied them with coal." In this particular, therefore, if the consumption of the coal should have been upon the premises, both the plaintiff and defendant have misused the grant, and M'Credy surely had no right to complain.

We contend, 1st, on the part of the plaintiff in error, that the meaning of the instrument is, that the race or canal is to remain for ever as a passage way for the common use and privilege of the owners of the property embraced in the deed of partition, and also for the use of the tenants and occupiers of the lots, with this restriction ; that neither owners, tenants nor occupiers shall put on the race or canal any boat of larger dimensions than will admit another of equal dimensions freely to pass it ; and, 2d, that each party is entitled to the use of one half the water and water-power ; which water and water power is to be used and applied only upon the respective lots.

Two cases were cited on the part of the defendant in error, which, it is supposed, establish principles in opposition to the construction which we propose to put upon the deed of partition. They are the cases of the *Lazaretto Road*, (1 *Ash.* 424), and *Kirkham* v. *Sharp*, (1 *Whart.* 323). The principle settled by these cases is, that if a party have a right of way appurtenant to land he cannot, by attaching other land to it, use this way to pass through all ; and that the extension of a right of way to objects not originally contemplated by the parties, is looked upon unfavourably by the law. These principles are so obviously sound

that we will not venture to question their propriety.   But surely, they have no reference to the present case, because it is not proposed to extend the right to use the canal, if it is to be considered as a right of way, to the owner of any land but that which was embraced in the deed of partition.   Jamison, as a tenant and occupier of the Savage lot, however, had a right to use this canal for the passage of his boats: it was given to him by the deed of .partition, and if he brought coal down the canal and placed it on his landing, he had a perfect right to dispose of it to any one who was willing to become the purchaser, or to use it and consume it himself where he pleased.   His right of navigation was restricted by a single provision only, that his boats should be of a size sufficiently small to enable others freely to pass them.   There is nothing which confines the use of what is brought in the boats to the premises, and the mere ownership of the boats is regulated, to wit, that they shall belong to the parties who are the owners, tenants and occupiers of the land mentioned in the deed of partition. Jamison having rented a part of the Savage lot, has just as much right freely to' use this navigation during the continuance of his lease, as if he were the owner of the whole.   The case of *Watson* v. *Bioren*, (1 *Serg. & Rawle* 227), decides that where land is granted with a right of way, the right is appurtenant to every part of the land, and the grantee of any part, no matter how small, is entitled to use it.   This case proves conclusively that Jamison is as fully entitled to the use of this canal as is M'Credy or any other party. But cases upon the construction of deeds are of little authority, inasmuch as parties may enlarge or restrict their grants as they please.   Hence, it always resolves itself at last into the question of what is the meaning and intention of the parties.   This, as a general rule, must be drawn very much, if not exclusively, from the four corners of the deed itself.   It is therefore of little use to cite authorities upon this point, as the only question for decision is, what was the intention of the parties at the time they executed the deed of partition ?   Now there are some rules of construction which it is important to consider, and which are collected and arranged in *Comyn on Contracts* 36.   The general principle is, that the construction must be according to the meaning of the parties making the agreement, as collected from the terms used in it.   If the intent be plain and clear, we ought to put such a construction upon the doubtful words of a deed as will best answer the intention of the parties, and reject that construction which manifestly tends to overturn and destroy it.   These rules are the same at law and in equity, and it is only necessary to apply them to the interpretation of this deed of partition.

The question therefore is, what intention had the parties in view when they executed the deed of partition in 1826 ?   An analysis of this deed has already been submitted, and, from its provisions, it seems clear to me that the parties had two objects in view:   1.

[Jamison v. M'Credy.]

To use the canal or race as a passage for scows, boats and rafts; 2. To use it as a race for water-power. In reference to the first purpose suggested, that of a passage-way for boats, scows and rafts, but a single restriction has been placed upon it, viz., " that they would not permit or suffer to be put upon the canal or race, any boat of larger dimensions than would admit another of equal dimensions freely to pass it." The right to use it " for ever" is not only expressly given to the owners of the lots, but is also expressly granted to the tenants and occupiers thereof. There is nothing which can operate in any degree as a limitation upon the cargoes of the boats, or which points out what shall be done with the articles brought in them. If the cargo be coal, where is the clause which makes it necessary that it should be consumed upon the premises, and forbids its being sold to persons residing off the lots ? And if Mr Jamison is the tenant and occupier of a lot entitled to the use of this race, (which is not disputed), why can he not haul this coal to other property which he may own or lease, just as freely as he could sell it to others ? If it had been intended to confine the consumption and use of what was brought in the boats to the lots, it was easy to have said so. But this was not done, and a free use of the canal was stipulated for, to be enjoyed by the owners, tenants and occupiers of the lots embraced in the deed of partition. To say, therefore, that the parties meant to limit the use of the canal in the manner contended for by the defendant in error, is to annex a condition to the grant never contemplated by the parties at the time it was made, which is not among its provisions, and which is against the letter of the contract itself. The language is as follows: that the same, meaning the canal, " shall be and remain for the common use and privilege of the said Samuel R. Wood and Bernard M'Credy, their respective heirs and assigns, owners, tenants and occupiers of their respective lots of ground through which the said canal or race passes, as a passage for scows, boats and rafts." We grant that immediately after the above clause follows, in the same sentence, these words : " and for the introduction of the Schuylkill water from the dam, for the use of their respective premises." But this, upon no principle of construction, can limit the previous part of the sentence which applies to the navigation of the canal, so as to compel the parties entitled to use it to consume upon the premises what is brought in their boats. The language, " for the use of their respective premises," is confined exclusively to the use of the Schuylkill water from the dam. This is expressed in so many words, to wit : " for the introduction of the Schuylkill water from the dam for the use of their respective premises." It is connected with that part of the deed which applies to the navigation of the canal, by the copulative conjunction " and," and was not intended to mean that nothing should be brought upon the premises in the boats except what was used there, but was intended to enlarge and extend the grant. It

[Jamison v. M'Credy.]

was as much as to say, I not only give the free use and privilege of this canal as a passage-way for boats for ever, but, in addition to this privilege, I also give you the right to use it for the introduction of the Schuylkill water from the dam for the use of the premises. This construction is unquestionably the true one, as will be seen from what is said in a subsequent part of the deed of partition, which will be noticed when we come to consider the second object which the parties had in view in making the deed, viz., the water and the water-power.

Suppose a dwelling-house in this city, having the privilege of an alley alongside of it as a common passage-way for the owner and occupier thereof, and also having the hydrant-water in the yard, should be leased upon these terms, to wit, " with the free and common use of the alley, and of the hydrant-water, to be used upon the premises;" what would be its construction? Certainly that the tenant might freely use the alley as a passage-way for any purposes to which it could be lawfully applied, and that the restriction " to be used upon the premises," should be construed as having reference only to the hydrant-water. This would be the construction which would be most in accordance with common sense and the meaning of the parties. And why should a different mode of interpretation be applied to the deed made between M'Credy and Wood? They expressly granted to each other the right to use the canal for boats, and, in addition, they gave the privilege of taking water from the canal for the use of their premises. Is it not, therefore, obvious that the restriction implied by the words " for the use of their respective premises," is to be applied to the water, and not to the navigation, of the canal? If this be a correct view of the question, Jamison committed no misuser of the canal when he brought coal down it and hauled it to his other property, which he either owned or leased. And when the Judge who tried the cause below, instructed the jury that if they found that Jamison used the navigation for the purpose of supplying a steam-mill not upon the premises with coal, it was a misuser of the grant and partition between the parties, he misconstrued the deed of partition, and committed such an error as that the judgment of the court below should be reversed.

But in order to make this position, if possible, still clearer, let us ascertain what the *second* object was that the parties had in view. It was to use this canal as a race for water-power. In regard to this object, there are two restrictions placed upon the exercise of this right: 1. That neither party shall use more than one-half of the water; and 2. That the introduction of the Schuylkill water from the dam shall be for the use of the respective premises; and it is stipulated, towards the close of the deed of partition, that the " water or water-power" shall not " be used or applied otherwise than upon their said respective lots."

What was the object of this restriction, which confines the use

of the water and water-power to the respective premises? It was to protect the water-power and the water from being lessened in quantity, which would materially influence its value; and to preserve it, the clause confining the use of the Schuylkill water from the dam "to the premises," was inserted in the deed. Had no such clause been contained in it, it might have been made a question, whether each of the owners of the land originally embraced in the deed of partition, and those holding under them, might not have purchased other land, adjoining the original fourteen acres and twenty perches, and extended the canal, thereby leading off the water and diminishing the force of the water-power. The same effect might have been accomplished by the use of pipes and hydraulic apparatus, which would have led off the water, and in this way produced the same effect as would have resulted from extending the canal. To guard against this danger, it was said in the deed of partition, after giving the right freely to use the canal as a passage-way for boats and scows, that it should be also used "for the introduction of the Schuylkill water from the dam for the use of their respective premises." In other words, it was meant to confine the use of the water and water-power to the premises, and not to limit the consumption of the articles brought in the boats, to the land originally embraced in the deed. But the concluding part of the same deed, and the language used, is decisive of the question, because it stipulates in express terms, that the parties shall not "at any time or times hereafter, permit or suffer the water or water-power to be used or applied otherwise than upon their said respective lots:" thus proving that the first restriction contained in the deed applied simply to the water, inasmuch as the same idea is reiterated again towards the close of the instrument, and in such phraseology as to avoid all mistake respecting its meaning. If this view of the question is sound, then Judge BURNSIDE clearly erred in the construction of the deed of partition, when he told the jury that Jamison, who was the renter of the Savage lot, had no right to use the canal for the purpose of bringing coal in his boats, which he consumed at a steam-factory leased by him off the premises.

One thing is clear, and that is, that the only restriction as to the business which shall be carried on on the premises, is that which interdicts the "manufacture of gunpowder, or any part of the process of the manufacture of that article," from being pursued on the property. Every other employment to which the property is, in its nature, adapted, may be lawfully engaged in, without a violation of the deed of partition. The mills may be all abandoned, and their character changed, and there is nothing which compels the parties to use the water-power to which they are entitled. Savage's representatives could open a coal or lumber-yard upon the premises, and use the canal navigation for the purpose of bringing the coal and lumber on to the premises. If Savage could

[Jamison v. M'Credy.]

do so, his lessee has the same privilege, under the grant; and as Jamison stands in his shoes, his right to use the canal appears to me to admit of no reasonable doubt. If he could open a coal-yard and sell the coal to persons residing in the town of Norristown, and off of the premises, he could take it away to use himself. Whether he took it to his own house in the borough to consume, or hauled it to a steam-mill which he had elsewhere rented, seems to be altogether immaterial. In every aspect, therefore, in which we can view the case, we cannot concur in the opinion expressed by the Judge below, that the bringing coal down the canal, to supply a steam-mill off of the premises, was a misuser of the grant, for which an action would lie, especially when it was done by one who had a full right to the use of the race or canal.

*Fallon*, contra, was stopped by the court.

The opinion of the Court was delivered by

ROGERS, J.—Samuel R. Wood and Bernard M'Credy were the owners of a property called the Norristown Mills, and about 12 acres of land, as tenants in common. The 30th of January 1826 they made partition of the lot. Before partition they cut a race or canal through the property, and in the deed of partition they marked out and established a boundary across the race; M'Credy taking the upper, and Wood the lower part. Wood's interest was taken in execution and sold by the sheriff of Montgomery county to John Savage, and on his death the property was leased by his executors to Samuel Jamison, the plaintiff in error and the defendant below. Jamison also rented a steam mill in the neighbourhood, altogether distinct and separate from the premises divided by the partition. After notice by M'Credy to Jamison, the latter brought coal, in boats, by way of the canal to the landing on the canal, for the use of the steam mill; and the same was taken therefrom and used for that purpose.

Before discussing the main question I will notice a preliminary point. It is said that the plaintiff was not entitled to a verdict, because M'Credy himself used the canal for the same purposes to which it was applied by Jamison; that M'Credy unloaded lumber and everything he wanted there to supply the wants of his hands, although not living on the premises; that he supplied them by this means with coal, &c. Whether this amounts to a misuser of the grant we will not pretend to determine; for, admitting that it does, it is no defence in this suit, as one wrong cannot justify another wrong. The only purpose such evidence can serve, is to show the construction which each of the contracting parties put upon the deed, and in that view only is the argument entitled to respect. But it may be doubted whether, granting the facts to be as stated, it raises the same question as here; for the gravamen of the plaintiff's complaint is the misuser of the grant, in this, that the defend-

[Jamison v. M'Credy.]

ant used the common property as a means of conveyance and a place of deposit, for a lot not connected with the premises, but detached therefrom, and from the connection which arises from the temporary occupation of a tenant under a lease of a moiety of the property from the owner. To that question only the judgment of the court applies; for it will be time enough to decide the points which have been incidentally mooted when they fairly arise.

The whole case turns on the construction of the deed of partition; and this is a question of intention to be collected from the terms of the deed. The primary object the parties had in view in cutting the canal, it cannot be doubted, was for the use of the water-power; neither to use more than one half on the lots. But in subserviency to this there was a secondary object; for as it was supposed the premises might be profitably employed in other ways, as by the erection of a furnace, steam mill or storehouse, a privilege is reserved whereby the owners, their heirs, tenants, &c. may erect such buildings *on the premises,* to which, of course, the canal would be appurtenant, with, nevertheless, the restriction that they are not allowed to carry on, or permit or suffer to be carried on, upon the same lots, the manufacture of gunpowder, or any part of the process of the manufacture of that article. The reason of the prohibition is very obvious, but beyond that there is nothing in the agreement to prevent the erection of any building whatever, of any sort or description, nor are parties restrained from carrying on any business *on the premises* which they may think proper. For all legitimate purposes within the contemplation of the parties, it was supposed the premises would afford abundance of accommodation, without inconvenience to either, or interfering in the slightest degree with their primary and original design in making the canal. It is, however, a different question, when it is attempted to pervert it from its original design and from a highway for the use of a common property to convert it into a canal common to all the property which either party might choose to purchase or even to lease in its immediate neighbourhood. If it may be used in the manner proposed, it may be used without stint or limit at the pleasure of any one or more of the tenants or occupiers for the whole borough of Norristown. If it is a right, it is a right without restriction, and, of course, susceptible of great abuse. This construction we cannot adopt, as we conceive it to be at war with the words as well as the general intention to be collected from the nature of the contract and the spirit of the agreement. The defendant contends there were two objects in view; 1. To use the canal or race as a passage for scows, boats and rafts; and 2. To use it as a race for water-power. It is a mistake to suppose the race to be an object; it was rather a means to effect an object; that is, to furnish them with a water-power, and to accommodate the owners, &c. with a cheap and convenient means of supplying whatever might be wanted or needful for the

premises, of which they were originally the joint, and afterwards the separate owners. It cannot, with any propriety, be said to be a right personal to the owners; but it is annexed to the land, and runs with it. The inconvenience which would arise from holding it to be a personal privilege, is a strong argument against the defendants' construction; for it is not easy to believe that such an intention entered into their minds at the time the canal was made, or subsequently, when it was divided between them. This case comes within the principle settled in *Kirkham* v. *Sharp*, (1 *Whart.* 334); it is an attempt to extend the use of the canal to objects not contemplated, and which do not fall within the orginal designs of the parties. Little light can be derived from particular expressions in the deed, for they must be construed in subserviency to the general intention, where that intention can be discovered from the whole instrument. The restriction by which neither party are permitted to use more than one half the water-power, applies to the water-power itself; a restriction obviously expedient and necessary, and which indeed would be a legitimate inference, without the aid of express words. So the regulation as to the size of the boats was introduced to prevent an abuse in that particular. The arguments drawn therefore from these clauses are entitled to little weight. The language of the deed is, that the same shall be and remain for the common use and privilege of the said Samuel B. Wood and Bernard M'Credy, their respective heirs and assigns, owners, tenants and occupiers of their respective lots of ground through which the same canal or race passes, as a passage for scows, boats and rafts, and for the introduction of Schuylkill water *for the use of their respective premises*. We cannot admit that the last words of the sentence are confined to their immediate antecedent. It extends not only to the introduction of the Schuylkill water, but to all the purposes to which it may be put for the use of the premises. We perceive no intention by this clause to enlarge the grant. The construction of the defendants not only makes the canal an appurtenant to the property owned by them and M'Credy, but it substantially converts it into an appurtenance to a property which either party might thereafter purchase or lease; nay more, which the tenants might afterwards take on lease.

Judgment affirmed.