# Van Ohlen's Appeal.

1. B., the owner of a tract of land, conveyed part of it to H. by metes and bounds, a parenthesis in the deed, saying the north "line" to be the centre of a public road not more than 40 feet wide to be laid out and opened, diverging towards the valley of Snyder's run, or to run on said line as a centre up the hill as far, &c., provided, required by said B., his heirs or assigns." *Held*, that this was not a fixed and certain reservation, nor absolute in its nature.

2. The reservation was a power preserved by B. to himself to lay out a road along or near the line.

3. B. afterwards conveyed to C. part of the same tract on the north of the line and adjoining it; and to M. another part east of the first tract and of the *end* of the line: *Held*, 1. That M. could not enforce the opening of the road; 2. That H. could not enforce the opening on the north side of the line.

4. The reservation is governed by the property described in it as the property of B.; not by the fact that he was at the time owner of other property outside of that thus described.

5. An obscure reservation in a deed construed.

6. Jamison v. McCredy, 5 W. & S. 129; Kirkham v. Sharp, 1 Whart. 323, considered.

October 31st 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the District Court of *Allegheny county*: In Equity: No. 197, to October and November Term 1870.

The bill in this case was filed, December 9th 1869, by William McCreery and John H. McCreery against John Van Ohlen; it set out:

1-4. That George Breed, owning 40 acres of land, on the 25th of May 1857 conveyed 10 acres, part of the tract, to Louisa Hartupee; that one of the boundary lines of the tract was from a

[Van Ohlen's Appeal.]

stone in the centre of Strawberry lane and Sarah street, to a post in centre of Pasture lane, "the line thus described from the stone in Strawberry lane and Sarah street, to be the centre line of a public road, not more than 40 feet wide, to be laid out and opened, diverging towards the valley of Snyder's run, or to run on said line as a centre, along up the hill as far eastwardly as this last point in Pasture lane, provided it be required by said Breed, his heirs or assigns;" that all the land abutting on the said Hartupee line, between the stone in the centre of Strawberry lane and Sarah street, to the post in Pasture lane, at the time of the making the said deed, belonged to Breed; that William McCreery, one of plaintiffs, became owner of the 10 acres; that Breed's executors, on the 6th of July 1867, conveyed to Jonathan Gallagher 26 acres of the 40 acres, and Gallagher, in September 1868, conveyed 6 acres of the 26 acres to John H. McCreery.

5. That John H. McCreery had laid out a plan of lots of the 6 acres, one of the streets laid out in the plan and opened follows the line of Pasture lane, and ends at the post in the lane mentioned in the Hartupee deed as the terminus of said public road; that John H. McCreery owns divers parcels of lands fronting on the street, and situate near the point of intersection of his street with the road, mentioned in the Hartupee deed, the lots being part of the 6 acres.

6. That in the fall of 1868, John H. McCreery being about to begin the sale of this 6 acres, notified William McCreery, that as an assign of Breed he required the road to be opened "for its width of 40 feet;" and in pursuance of the notice, William McCreery removed his fence 20 feet back from the line of the road.

7. That in September 1869, John H. McCreery posted in a public place along the line of the street, that the road was a public road, and was required by him as one of the assigns of Breed as a public road for the width of 40 feet.

8 and 9. That the defendant owned a lot abutting on the public road mentioned in the Hartupee deed, and the lot was part of the original 40 acres of Breed at the time of the conveyance to Hartupee; that since the public notice, defendant had commenced excavating for the erection of a house on the road and within 20 feet of the centre line, and continued to make the erection and build walls within the line of the road.

The prayer was for an injunction to restrain the defendant from proceeding with the excavation and building, and for general relief.

The defendant by his answer, not denying any of the allegations of the bill, averred as follows:—

That he was the owner in fee of the lot; that neither of the plaintiffs had any right to declare his land a public road;

that the reservation of the road, not more than .40 feet wide, "was a reservation to Breed and his heirs, or those to whom he should thereafter assign the reservation, and against the grantee in the deed and his assigns; that if the reservation were good in favor of John H. McCreery, as an assign of Breed, it could be only in common with all the assigns of Breed and the requirement of the 40 foot road must be by a majority in interest of those assigns; that William M. Claney, a grantee of Breed, required and received from Breed a street of 20 feet, along the "centre line" mentioned in the Hartupee deed, which is laid down in Claney's plan of lots, which estops any further demand from Breed's heirs or assigns.

The deed from Breed to Mrs. Hartupee was for "All that certain tract or parcel of land situated in reserve tract opposite Pittsburg, being part of the out-lots, numbers 222, 223 and 241, described as follows, to wit: Beginning at a stone at the centre or junction of Ann and Mary streets, on a plan of lots laid out by said Breed, on parts of the out-lots Nos. 240 and 241, in said tract; running thence north, &c., to a post in the centre of Sarah street; thence north, &c., east, along the centre of Sarah street, &c., to a stone in Strawberry lane; thence north, &c., east, (by various courses) to a post in the centre of Pasture lane (the line thus described from stone in Strawberry lane and Sarah street to be the centre line of a public road not more than 40 feet wide to be laid out and opened diverging toward the valley of Snyder's run, or to run on said line as a centre along up the hill as far eastwardly as this last point in Pasture lane, provided it be required by said Breed, his heirs or assigns); thence south, &c., along the centre of Pasture lane, now vacated, and along the centre of a street on the top of the hill, called West street, and again along another vacated part of Pasture lane to the centre of Ann street; thence, &c., to the place of beginning; containing ten acres, three roods and fourteen perches, subject, however, to the roads, streets or lanes, except the vacated parts as aforesaid." * * *

On the 8th of July 1869, the heirs of Breed conveyed to William M. Claney, "all that parcel of ground situated in the Reserve tract, opposite Pittsburg, in the county of Allegheny, being Block 2, in George Breed's plan, subdividing a part of said tract as recorded, &c., and is bounded and described as follows, viz.: Beginning at a locust post in the centre of Pasture lane, on the southerly side of Sarah street; thence along said centre line, &c.; thence along property formerly of L. D. Hartupee, &c., to Sarah street; thence along the line of Sarah street, &c., to the point of beginning, containing three roods and twenty-one perches," &c.

On these premises Claney laid out a plan of lots of 20 feet each fronting on Sarah street, and "extending back to the line

[Van Ohlen's Appeal.]

of property formerly of L. D. Hartupee," and on the 30th of October 1869, conveyed lots No. 15 and 16 in the plan to George Leppert, who afterwards conveyed these lots to Van Ohlen, the defendant.

The annexed draft, which exhibits the location of different lots, &c., is necessary for an understanding of the case.

The court, on the 13th of August 1870, " decreed that the said defendant John Van Ohlen, his agents and servants, be perpetually enjoined and restrained from proceeding with the making of the excavation or the erection of the building or buildings complained of. And that said defendant be ordered and directed, within ninety days from this date, to abate and remove any building or buildings already erected by him, his agents or servants, within twenty feet of the centre-line of said public road mentioned in the bill, and within said line to fill up the excavation within the said twenty feet, made for the erection of such building or buildings."

The defendant appealed, and assigned the decree for error.

*T. B. Patterson* (with whom was *T. M. Marshall*), for appellants.—The clause in question contains no requisite of a dedication of a road: 1 Washburn on Easements, ch. 1, § 5, parts 10, 39 ; Darlington *v.* Commonwealth, 5 Wright 63 ; Schenley *v.* Commonwealth, 12 Casey 29. The reservation is adverse to Mrs. Hartupee : Bell *v.* Ohio and Penna. Railroad, 1 Id. 161. The owners of the Claney lots only could demand the opening of the road : Holliday *v.* Ward, 7 Harris 485. The defendant is owner of the land on which the alleged nuisance is being erected ; it is not a nuisance *per se,* and irreparable damage is not alleged : Sparhawk *v.* Union Pass. Railroad, 4 P. F. Smith 401 ; Hilliard on Injunction, ch. 9, p. 269 ; Rhea *v.* Forsyth, 1 Wright 503 ; Riddle *v.* Ash, 2 Ashmead R. 211.

*M. W. Acheson* (with whom was *W. B. Rodgers*), cited Clark *v.* Martin, 13 Wright 289 ; Jamison *v.* McCredy, 5 W. & S. 129 ; Washburn on Easements 217, 86 ; Washburn on Real Property, book 2, 28 ; Watson *v.* Bioren, 1 S. & R. 227.

The opinion of the court was delivered, January 9th 1872, by
AGNEW, J.—This case is governed by the construction to be placed upon the deed of George Breed to Louisa Hartupee, referred to in the bill of the plaintiffs. The 10 acres conveyed to Mrs. Hartupee are taken out of the heart of four out-lots of the town of Allegheny, laid out by the state in separate parcels, and numbered 222, 223, 240 and 241. George Breed was the owner of these four lots, and in his deed referred to them only. They lie adjoining to each other, running from a corner common to the four lots, and divided from the land now claimed by John H. Mc-

Creery, by Pasture lane, one of the original lanes laid out by the state in the survey of her plan of out-lots, upon her reservation at the mouth of the Allegheny river.   The reservation of a public road, the subject of this dispute, is not referred to in any way or in any part of the deed to Mrs. Hartupee, except as it is found within a parenthesis in the middle of the description of the ground conveyed by the deed.   The description beginning at a stone in the centre of the junction of Ann and Mary streets proceeds by metes and bounds to a stone in the junction of Strawberry lane and Sarah street, thence north 3° 55' east 14$\frac{36}{100}$ perches to a post; thence north 26° 45' east 16$\frac{8}{10}$ perches to a post; thence north 39° 48' east 10$\frac{73}{100}$ perches to a post; thence north 60$\frac{1}{4}$° east 6$\frac{38}{100}$ to a post in Pasture lane (the line thus described from stone in Strawberry lane and Sarah street to be the centre line of a public road *not more* than *forty* feet wide, to be laid out and opened *diverging toward the valley of Snyder's run*, OR *to run on said line as a centre*, along up the *hill as far eastwardly as this last point* in Pasture lane, PROVIDED IT BE REQUIRED BY SAID BREED, HIS HEIRS OR ASSIGNS), thence south 13° 10' east, 69$\frac{12}{100}$ perches along the centre of Pasture lane, &c.   The plaintiff, in the bill before us, claims that this was a fixed and certain reservation of a public road along a certain boundary line as its centre, which operated as a reservation of twenty feet along this line out of the land sold Mrs. Hartupee from Strawberry lane to Pasture lane, carrying along with it a mutual obligation on part of Breed and his assigns to lay off 20 feet along this boundary upon his own land; and that any one being an assignee of any part of Breed's land can enforce this obligation, notwithstanding Breed and those claiming under him the other parts of the four out-lots not sold to Mrs. Hartupee never exercised his option, by requiring the road to be opened.   We think this is not the true construction of the deed.   The reservation was neither certain and fixed in its location and in its measurement, nor was it absolute in its nature.   It was not fixed in location, for it was to be laid out and opened either diverging toward the *valley of Snyder's run* (which would carry it to the left or westwardly from the line of the deed), or to run upon that line as a centre (so says the deed), along *up the hill* as far eastwardly as this last point in Pasture lane.   It was not certain in its measurement, for it was to be *not more* than forty feet wide, but how much less depended on the future determination of Breed.   Nor was the reservation absolute in its nature, for it was to be only "provided *it be required* by said Breed, his heirs or assigns."   That it was the intention of Breed, by this contingent reservation, to preserve to himself the power of laying out a street along or near to the Hartupee line is rendered still more .manifest by the accompanying drafts furnished to us.   Sarah street, upon which the reser-

vation begins at Strawberry lane, bending to the right by three distinct courses, comes out upon Pasture lane, not far from the post on Pasture lane to which the Hartupee line runs, and in its general course is nearly parallel with the Hartupee line, which was to be the centre line of the road. The Hartupee line, beginning at the stone in the centre of Strawberry lane and Sarah street (which is a street of forty feet in width), runs longitudinally and diagonally along Sarah street until it passes out of the latter about two hundred feet from the stone.

The effect of this course would be, that adding the width of the reserved road along the Hartupee line to its point of divergence from Sarah street, the latter would increase in width until at the point of divergence it would be 80 feet wide, and then passing this point it would suddenly relapse to its former width of 40 feet. Viewing this fact and the parallelism of the two roads, and it appears to be pretty evident that Breed, who then owned all the property, intended to do away with Sarah street if he opened the road along the centre line, and for this purpose he reserved the right of diverging from the centre line, at the end of the second course, toward the valley of Snyder's run, coming out just about where Sarah street comes into Pasture lane; or, if he preferred, to keep on the centre line the whole distance to Pasture lane, and thus preserve the parallelism with Sarah street. But it appears that Sarah street remains as at first located, and it is not alleged that Breed ever gave notice of his intention to open the road along the centre line. It is obvious, therefore, that he must have concluded to suffer Sarah street to remain as it stood, and not to open the road on the centre line. Those to whom his title has descended appear to be of the same mind, for instead of a road required to be opened along the Hartupee or centre line, they have laid out lots between Sarah street and this line coming entirely up to the line. With this view of the reservation in this deed, it is evident that Mrs. Hartupee and her alienees have no power to open a road on the Breed side of this line. William McCreery has no interest, therefore, in this question. John H. McCreery has still less, for his land lies on the east side of Pasture lane and is no part of any of the four out-lots set forth in the deed. The reservation in the deed is governed by the property described in it as the property of Breed, and not by the fact that Breed was the owner at the same time of other property outside of the property thus described. On this point Jamison *v.* McCredy, 5 W. & S. 129, cited by the appellee, is against him; to which may be added Kirkham *v.* Sharp, 1 Whart. 323. According to these cases, if the reservations in this case were absolute and certain, and extended to the alienees of Breed, it would not reach the alienees of the property outside of the deed. We are of opinion, therefore, that the court below erred in its construction of the deed to Louisa D. Hartupee,

[Van Ohlen's Appeal.]

and the decree is reversed and the bill dismissed at the costs of the appellees.