## McNish *versus* Reynolds, Lamberton & Co.

When, at the moment for the performance of a contract by one party both agree to a postponement the new contract is as valid as the old, and the mutual promises, the one to deliver and the other to accept and pay, are ample considerations to sustain the new contract.

October 19th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Venango county:* Of October and November Term 1880, No. 276.

Assumpsit by W. C. McNish, to the use of F. R. Martin, against J. B. Reynolds, S. H. Lamberton and R. Colbert, trading as Reynolds, Lamberton & Co.

At the trial, before Taylor, P. J., it appeared that in April 1877, W. C. McNish agreed to buy of George Van Vleck five thousand barrels of oil, on or before December 31st 1877, at seller's option, at the rate of $2.51¼ per barrel. To secure the faithful performance of his contract, McNish deposited with the defendants $2500 as a margin.

It appeared from the testimony of McNish, that on June 21st 1877, Van Vleck, through his broker, one Bettes, tendered the oil at Titusville to McNish, when the latter informed him that he could not take the oil at that time and pay for it, but could if he was given a little more time. Bettes then referred him to Van Vleck, and on

95 483
99 37

95 483
†194 486

95 483
28 SC 451

95 483
40SC 565

the same day McNish went to Oil City and saw Van Vleck, when, as McNish testified, the following interview was had:—

" I told him that owing to the failure of the bank, my funds being all locked up in the bank I needed a little time to make different arrangements, which, if 'he would grant, I would take the oil. He asked me how long I wanted. I told him I could arrange for thirty days. He replied that if I would take the oil up, he would give me the month of July to take it in. I told him I would arrange to take the oil in the month of July, and that was agreed upon, and we separated."

McNish further testified that this tender was not withdrawn. Van Vleck, on the contrary, testified that when McNish declared that he was unable to take the oil, and asked for time, he, Van Vleck, had simply withdrawn the tender.

The contract was assigned by McNish to B. F. Martin, July 18th 1877, and on the last day of July 1877, A. H. Bronson, the agent of Martin, went to Oil City with the money to pay for and take the oil. He called on Bettes, who declined to have anything to do with the contract, and Van Vleck was not to be found, he being, as it was afterwards disclosed by the evidence, at Buffalo, N. Y. About November 8th 1877, Bettes again tendered certificates to Bronson, and the latter alleging that he had performed or offered to perform on behalf of McNish, declined to accept, and the certificates were sold.

Martin's agent, Bronson, demanded the $2500 margins from Reynolds, Lamberton & Co., but they having been indemnified by Van Vleck, refused to pay to Martin, and subsequently paid them to Van Vleck. This suit was then brought to recover said amount, with interest.

The third point of the defendants, which the court affirmed, was as follows:—

If the tender of June 1877 was not withdrawn, the rights and liabilities of the parties were fixed by the tender and failure to accept the oil and pay for it, and could not be changed except by a new contract founded upon a new consideration.

In the general charge, the court, inter alia, said:—

" If we remember aright, the plaintiff swore that the tender of June 21st was not withdrawn. You will remember the evidence for yourselves, and not as we remember it, and we instruct you as matter of law, if that be true he cannot recover in this case, without a new and sufficient consideration, of which there is no evi dence here. But if you believe the defendants that the tender was withdrawn, and if you believe the balance of what the plaintiff says about the contract, that he should have the right to tender the money during the month of July, if you are satisfied from the weight of evidence that this is true, then he might recover upon the evidence of the defendants."

[McNish v. Reynolds.]

Verdict for defendants, and after judgment thereon plaintiff took this writ and alleged that the court erred, inter alia, in the answer to the above point and the foregoing portion of the charge.

*F. B. Guthrie* and *Julius Byles*, for plaintiff in error.—In the case of a parol contract, a subsequent parol agreement to enlarge the time of performance is binding. The mutual promises of the parties to deliver and accept and pay are ample consideration for the new contract : Greenl. on Ev., sect. 304 ; Carrier *v.* Dilworth, 9 P. F. Smith 406 ; Wilgus *v.* Whitehead, 8 Norris 131 ; Robinson *v.* Batchelder, 4 N. H. 40 ; McCombs *v.* McKennan, 2 W. & S. 216 ; Keating *v.* Price, 1 Johns. Ch. 22. Forfeitures will only be enforced when it is clearly apparent that such was the intent of the parties.

*C. Heydrick*, for defendants in error.—The statement of the rule, in Wilgus *v.* Whitehead, 8 Norris 131, relied upon by plaintiff's counsel, as well as in Goss *v.* Lord Nugent, 5 B. & Ad. 58, and in Chitty on Contracts 154, plainly implies that after the breach of a written contract, its terms cannot be varied by an oral agreement without a new consideration. And the reason is obvious. After a breach there are no covenants to be performed, and consequently none to be varied or modified; the rights and obligations of the parties are changed; it is no longer a question of performance ; it has become a question of damages. The right of the party who has performed or tendered performance to damages is fixed by the other party's breach and cannot be divested without a consideration. And so, it is conceded, might a new contract between Van Vleck and McNish have been sustained. The mutual promises would have been the consideration, each for the other, but not for a relinquishment of damages for the breach of a former contract: Wilgus *v.* Whitehead, *supra ;* Goss *v.* Lord Nugent, 5 B. & Ad. 58.

Mr. Justice Trunkey delivered the opinion of the court, November 8th 1880.

Van Vleck contracted to sell to McNish five thousand barrels of oil at $2.51¼ per barrel, to be delivered at seller's option, at any time from April 20th to December 31st 1877, to be paid for as delivered. McNish testifies, that on the last day of June, at Titusville, Bettes, acting for the seller, tendered the oil to the buyer, who answered that he was not in condition to take the oil and pay for it, but could if he had a little time ; whereupon the agent referred him to his principal. On the same day he went to Oil City and there met the principal, Van Vleck, and what passed he states thus : " I told him that owing to the failure of the bank my funds were all locked up in the bank; that I needed a little time

[McNish *v.* Reynolds.]

to make different arrangements, which, if he would grant, I would take the oil. He asked me how long I wanted. I told him I could arrange for thirty days. He replied that if I would take the oil up he would give me the month of July to take it in. I told him I would arrange to take the oil in the month of July, and that was agreed upon, and we separated." He also said the tender was not withdrawn. For the purpose of the present inquiry this statement must be taken as true. It may have been exceedingly generous, or very foolish, in Van Vleck to change the contract into a buyer's option for one month, and the jury might not have believed a word of it; but if they did believe it they were instructed that, unless the tender was withdrawn, the plaintiff could not recover, "without a new and sufficient consideration, of which there is no evidence." Whether this instruction was correct is the sole question here.

An accepted rule, applicable to such contracts as these parties originally made, was stated in Goss *v.* Lord Nugent, 5 B. & Ad. 58, as follows : "After the agreement has been reduced into writing, it is competent to the parties, at any time before the breach of it, by a new contract not in writing, either to waive, dissolve or annul the former agreement, or in any manner to add to, or substract from, or vary or qualify the terms of it, and thus to make a new contract; which is to be proved, partly by the written agreement, and partly by the subsequent terms engrafted upon what will be thus left of the written agreement." It is manifest from the charge, that the learned judge, recognising the rule, held that if the new contract was made at the time the oil was tendered, it was after the breach of the former.

If, at the moment for performance of a contract by one party, both agree to a postponement, is the contract broken? A. sells B. a horse for a stipulated price ; the horse to be delivered and money paid on a certain day. At the appointed time A. tenders the horse ; B. says, I am not ready, but if you will wait till to-morrow I will take the horse and pay you, to which A. agrees. The new contract is as valid as was the old. The mutual promises, the one to deliver and the other to accept and pay, were ample consideration to sustain the new : Carrier *v.* Dilworth, 9 P. F. Smith 406. Can it be that in such case the old was broken and A. could recover damages for the breach? If his right of action accrued at all it was at the instant he agreed to a change of time for delivery and payment, instead of demanding strict performance. The parties carried the yet unbroken contract into a new one, and neither has a just claim for damages.

On the day the oil was tendered the parties mutually agreed that the buyer might take it at any time in the month of July. Had Van Vleck refused to extend the time, it was not then too late for McNish to perform his agreement. True, he said he was not in condition to do so and asked time ; but had his request been denied,

[McNish *v.* Reynolds.]

possibly he would have succeeded in performance. The oil was due, not past due. Negotiations, begun immediately on its becoming due, ended in an agreement for extension of time before it had become overdue. Nothing in this agreement involved a withdrawal of the tender—the seller was to keep the oil ready for the time named, at the buyer's option, not his own. Every reason which would enforce this contract, had it been made before the day of the tender, applies now ; for, made at the time the oil could have been taken, the party would be liable to be thrown off his guard, or to be defrauded, if the other could treat it as invalid, same as if made before the day. But after breach of a contract, and right of action accrued therefor, the case may be governed by other principles.

Having reference to the facts as alleged by plaintiff, and which the jury would have found had they believed him, we are of opinion it was error to affirm the defendant's third point ; and in so far as this error pervades the matter of the other assignments there was error.

Judgment reversed, and a *venire facias de novo* awarded.