## Green *v.* Paul et al., Appellants.

*Contract—Evidence to vary written instrument.*

Where a building contract in writing was so vague and indefinite in its terms that nearly all the details of the work were left unprovided for, and had to be supplied orally from time to time in order to carry it out satisfactorily to the parties, it is not improper to instruct the jury that they may regard the written contract as altered or annulled by the conversations between the parties.

Argued Jan. 23, 1893. Appeal, No. 3, Jan. T., 1893, by defendants, Andrew N. Paul et al., owners, and the Schuylkill

River East Side R. R., contractor, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1886, No. 97, M. L. D., on verdict for plaintiff, Andrew M. Green. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM, MITCHELL and DEAN, JJ.

Scire facias sur mechanic's lien.

At the trial, before BRÉGY, J., it appeared that plaintiff made a contract in writing to build a stable for defendants for the sum of $5,670. He filed a claim for $5,758.46, averring that the contract had been superseded by oral agreements as to the work.

The court charged in part as follows:

" [It is an admitted fact here that Mr. Green, who is the plaintiff, made a contract to furnish this stable for $5,670, and that he has charged more than that for the work. The first thing you are to determine is whether that written contract to furnish the stable for $5,670 is the chart to guide you during this whole transaction, or, in other words, whether they changed that contract or the work under that contract, because if that was the contract and that was not altered, Mr. Green must furnish all that he promised to furnish for that sum of money, and he cannot do the thing he agreed to do and then charge more than he agreed to charge for it. But he claims that the contract was altered, if not practically annulled, and that they did the work under an entirely different agreement.

" You have heard what Mr. Ellis says upon that and all the surrounding circumstances, and while I may say that the effect upon my mind is that there is a sort of working agreement here, that there were some changes, I may be wrong about that, but that is a matter entirely for you. If from the evidence you believe that the contract was not altered, then you are to determine whether Mr. Greene did the things he promised to do for that amount of money, and whether he has gotten paid for what he did under that agreement. I suppose that it is hardly worth while to pursue that branch of the question further on my part, because the contention of Mr. Greene is that they did not work under that contract; that the contract was changed and altered, and that he did not comply with that written contract, but that by the consent of everybody on both sides they proceeded to construct in very many important and mate-

rial things a building different from that which was originally intended and mentioned in the contract; and that he did a certain amount of work; that he simply charged reasonable prices, and if that is so that contention would be right.] [2]

" [Then there comes the question of the bills which amount to $756.61. This is what you will have to do with that before you will decide that the railroad company should receive credit for them. If the railroad company through their agents agreed with Mr. Greene that he should do other things in connection with this building which they were to pay him for—extra things in connection with this contract—which increased the amount which would come to him beyond those bills, and that the amount he has charged for in his lien is a proper amount to charge the railroad company for beyond those bills, then these bills would not be a proper credit for the railroad company, because he does not charge them in his lien with the amount of these bills, as I understand it, and therefore it depends upon whether the amount he charges them for is right. If what he agreed to do for them and they agreed to pay him for is properly included in the lien, then the amount of these bills would not be a proper charge against that company, because that was outside of the contract. It is simply to illustrate that while of course no man would say that a building would be complete without a roof, 'I won't charge you for the roof because you have paid for it, but I charge you for the other things which you did not pay for.' Now that is practically the case here. You will have to decide whether that is a right contention or whether it is not. Of course if the contract had to stand as originally made, this would be a proper credit to the railroad company, because it is admitted that those are bills which the railroad company paid and were things that were put into this building."] [3]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* (2, 3) were instructions, quoting them.

*W. H. Addicks*, for appellant, cited: Phillips v. Meily, 106 Pa. 536; Oppenheimer v. Wright, 106 Pa. 569; Jackson v. v. Payne, 114 Pa. 67; Jones v. Backus, 114 Pa. 132; Sylvius v. Kosek, 117 Pa. 67; English's Ap., 119 Pa. 533; Honesdale

Glass Co. v. Storms, 125 Pa. 268; Schroeder v. Galland, 134 Pa. 277.

*Robert Alexander, Edward W. Magill* with him, for appellee, cited: Hollaway v. Frick, 149 Pa. 178; Bryant v. Stilwell, 24 Pa. 314; Moore v. Carter, 146 Pa. 492.

PER CURIAM, February 6, 1893:

It appears that Mr. Green, the plaintiff, made a written contract to construct the stable in question for the sum of $5,670, and that he has charged more than that sum for doing so. An examination of the case, however, shows, and we think very clearly, that this written contract was not regarded by either party when the work came to be done. Indeed, it is so very vague and indefinite that it would be difficult to carry it out literally. Nearly all of the details of the work were left unprovided for, and had to be supplied orally from time to time, in order to carry it out satisfactorily to the parties. Under these circumstances we do not think it was error in the learned judge below to instruct the jury that they might regard the written contract as altered or annulled in the conversation between the parties. All of the questions of fact involved in the case were submitted to the jury under proper instructions.

Judgment affirmed.