# Fleck *v.* Collins, Appellant.

*Mechanic's lien—Apportioned lien—Public street—Contract.*

On a scire facias sur mechanic's lien, where the question at issue is the validity of an apportioned lien as determined by the existence or non-existence of a public street, the rights of the parties are to be determined in so far as the street is concerned, as of the time when the contractor commenced the work and the material men, the plaintiffs, the delivery of the material. If before the work was begun or material furnished a conveyance had been made according to a plan of lots showing the street in question, but it appears that the street was neither opened nor accepted by the authorities as a public street until after delivery had begun, it can in no way affect the validity of an apportioned lien filed by the material men.

The mere dedication of a street to public use by the owner will not make it a public street unless it is opened to and accepted by the public. When such a street has been opened it may be accepted by the municipal authorities, or by a public user, without the active intervention of the municipal authorities.

On a scire facias sur apportioned mechanic's lien, where one of the parties contends that a portion of the houses were built under one contract, and another portion under a separate and distinct contract, and the other party contends that the second set of houses were built under a modification of the original contract, and the evidence on the subject is conflicting, the case is for the jury.

Argued Dec. 16, 1904. Appeal, No. 224, Oct. T., 1904, by defendants, from judgment of C. P. No. 1, Sept. T., 1898, No. 1488, M. L. D., on verdict for plaintiff in case of Henry H. Fleck and George C. J. Fleck, trading as Fleck Brothers, v. Dennis Collins et al. and George W. Kline, trading as Kline & Company. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Scire facias sur municipal lien.

The facts appear by the opinion of the Superior Court.

444 FLECK *v.* COLLINS, Appellant.

Assignment of Errors—Opinion of the Court. [28 Pa. Superior Ct.

*Error assigned* among others was in refusing binding instructions for defendant.

*J. Quincy Hunsicker*, for appellant.—An apportioned claim cannot be filed against buildings or blocks separated by streets or by land not belonging to the owner of the buildings: Gordon v. Norton, 186 Pa. 168; French v. Kaign, 3 W. N. C. 495; Goepp v. Gartiser, 35 Pa. 130; Lucas v. Hunter, 153 Pa. 293; Schultz v. Asay, 2 Penny. 411; McCall v. Davis, 56 Pa. 431; In re Brooklyn St., 118 Pa. 640; In re Pearl St., 111 Pa. 565; Brown v. Cowan, 110 Pa. 588; Schroeder v. Galland, 134 Pa. 277; Waters v. Wolf, 162 Pa. 153.

The claim as filed includes buildings in two separate operations: Young v. Chambers, 15 Pa. 265; Chambers v. Yarnall, 15 Pa. 265; Goepp v. Gartiser, 35 Pa. 130; Norris's App., 30 Pa. 122.

*Rudolph M. Schick*, with him *Joshua R. Morgan*, for appellees.—Where two blocks of houses built under the same contract are not divided by a public street or alley, but by a private way, the right to which belongs to both blocks, there is not such a severance as will prevent an apportionment of a mechanic's lien against the several houses: Fitzpatrick v. Allen, 80 Pa. 292; Kline's App., 93 Pa. 422; Atkinson v. Shoemaker, 151 Pa. 153; Gordon v. Norton, 186 Pa. 168.

The buildings erected constituted but one operation: Mather v. Butler County, 28 Iowa, 253; McDonough v. Kane, 75 Ind. 181; Green v. Paul, 155 Pa. 126; McNish v. Reynolds, 95 Pa. 483; Dreifus v. Salvage Co., 194 Pa. 475; Carrier v. Dilworth, 59 Pa. 406.

OPINION BY PORTER, J.; July 13, 1905:

The plaintiffs filed an apportioned mechanic's lien against 132 buildings, of which forty-five fronted on the north side of Reinhard street, forty-four on the south side of said street, and forty-three on the north side of Upland street, all between Sixtieth and Sixty-first streets in the city of Philadelphia. The amount of the claim was $5,909.73, which was apportioned equally among the buildings. The lien averred that Upland and Reinhard streets were not open or dedicated streets at the

time the contractor, George W. Kline, made his contract with the owners or reputed owners. The plaintiffs issued writs of scire facias upon the claim, and a trial was had in the court below upon a scire facias sur apportionment No. 88, which resulted in a verdict and judgment in favor of the plaintiffs. The appellant contends that, under the evidence, the court should have directed a verdict in favor of the defendants, upon the grounds that the evidence established that forty-five of the buildings were, at the time the building operation commenced, separated by a public street, Reinhard street, from the other eighty-seven buildings included by the claim, and that the buildings were erected under two separate and distinct contracts, one for the erection of 140 buildings and the other for thirty-five buildings, neither of which contracts were completed.

The facts which bear upon the status of Reinhard street, as a public highway, are undisputed. Prettyman, the appellant, was the owner of a tract of land situate at the southwest corner of Sixtieth street and Kingsessing avenue, extending westward about two thirds of the distance to Sixty-first street. No streets had been located over this land by the municipal authorities, no owner had made an express dedication of any part of it as a public highway, and no streets had been opened upon it until after the commencement of the building operation in question. On January 2, 1897, Prettyman entered into a written contract with Hughes, under the provisions of which the former agreed "to advance certain moneys hereinafter mentioned on ground rent to the party of the second part as mentioned below; the party of the second part (Hughes) agrees with the party of the first part to purchase from the party of the first part 140 lots or pieces of ground situate on Upland and Reinhard streets as per plan attached to this agreement, for the price or sum of $64,200 and the party of the first part also agrees to advance in cash to the party of the second part $77,800, making a total of $142,000; in consideration of the first party advancing to the party of the second part the above $77,800 in cash, together with the price of the ground as above mentioned, making a total of $142,000, the party of the first part agrees to accept the above amount from the party of the second part by reserving 140 ground rents, being 136 ground rents of $1,000 each principal on the inside houses, and four ground

rents of $1,500 each principal on the four corner houses."
Hughes covenanted to erect or cause to be erected upon the
property 140 two-story seven-room dwellings within nine
months from January 1, 1897, said houses to be built accord-
ing to plan that day furnished by him to Prettyman, "but the
fronts of the houses to be similar to those erected by R. and
A. Wilson at Fiftieth and Woodland Ave." The agreement
contained specific stipulations as to the manner in which Pret-
tyman should make advancements as the work progressed, but
such details can have no bearing upon the decision of the ques-
tions raised by the record. The plan attached to the agree-
ment shows a strip of land, the width not designated, marked
"Reinhard (proposed street not on city plan) St." running
westward from Sixtieth street and parallel to Kingsessing
avenue ; and further south another strip, the width of which is
not given, running parallel to the proposed Reinhard street
and marked "Upland (proposed street not on city plan)
St." The plan shows thirty-five lots fronting on each side of
both of the proposed streets, making 140 lots in all, which
clearly indicates that it was then the intention of the parties
that the building operation should cover all the lots in the plan
fronting on each of the streets. It is an undisputed fact that
the land to the westward of these lots, including the proposed
streets, was the property of a private owner, who had no con-
nection with the proposed building operation. Prettyman had
no authority to dedicate Reinhard street as a public highway
from Sixtieth street to Sixty-first street, the next public high-
way to the westward. Prettyman subsequently executed 140
ground rent deeds, dated January 2, 1897, conveying the 140
lots referred to in the above agreement to Dennis Collins, his
coachman, who had no real interest in the transaction, and
was merely used by his employer as the instrument for carry-
ing out the transaction.

Hughes, on March 17, 1897, began the work of building
upon the ground, the first work being upon the buildings on
the thirty-five lots fronting on the north side of the proposed
Reinhard street. Hughes made an oral contract with Kline,
about April 1, to do all the plumbing and gas fitting for 140
houses to be erected on the property in question, the work to
be done and completed in every respect as in a certain desig-

nated house on Hicks street in the city of Philadelphia. Kline began work shortly after that time and on April 9, accepted the proposal of the plaintiffs to furnish the materials to the operation in question. The plaintiffs delivered the first material on May 7, 1897, and subsequently furnished to the operation the various items embraced by their claim, all of which were used in the buildings. While the work was progressing upon the first block of houses erected on the north side of Reinhard street, about April 1, 1897, Prettyman entered into negotiations for the purchase of land to the eastward, and about the fifteenth of the same month agreed upon the terms of purchase with the former owner. The deed which gave Prettyman title to the land between his former holdings and Sixty-first street was dated April 20, 1897 and acknowledged May 1, 1897. He testified that this deed was not delivered until June 4, 1897. There can be no question, however, that both Prettyman and Hughes dealt with the land as if Prettyman actually owned it prior to the date last mentioned, for the former by deed dated and acknowledged May 1, 1897, executed thirty-five ground rent deeds to Dennis Collins, for thirty-five lots within the limits of this very land; and Hughes, on May 18, 1897, applied for and received from the municipal authorities permits to erect buildings on a number of said lots.

Prettyman executed a deed to the city of Philadelphia, tendering a dedication of Reinhard and Upland streets from Sixtieth to Sixty-first street, as public highways, which deed was dated and acknowledged May 17, 1897, filed in the department of surveys on May 26, registered September 23 and recorded December 22, the dedication having been accepted by the board of surveys on November 1, of the same year. It thus appears that although this deed of dedication was filed with the department of surveys prior to the day upon which the deed, which vested in Prettyman title to the land between the original tract and Sixty-first street was, according to his own testimony, delivered to him, yet that deed of dedication was not made until after the contractor Kline had commenced work upon the ground, and the plaintiffs had begun to deliver materials which were actually being used in the construction of the buildings. Collins, by deed dated June 28, 1897, conveyed to Hughes, subject to the payment of ground rents

to Prettyman, one hundred and seventy-five lots, being forty-five lots on the north side of Reinhard street, forty-four lots on the south side of said street, forty-three lots on the north side of Upland street and forty-three lots on the south side of said street, which included the one hundred and forty lots embraced in the original agreement between Prettyman and Hughes, dated January 2, 1897, and also thirty-five lots lying between the original tract and Sixty-first street.    The building operation having been commenced on the thirty-five lots on the north side of Reinhard street was continued on the same side of that street over the newly acquired property westward to Sixty-first street, the work progressing on all of the buildings at the same time.    When the parties were ready to begin operations on the south side of Reinhard street, and while the work was still in progress on all of the buildings upon the north side of that street, the building permit for all of the buildings, forty-four in number, on the south side of that street, extending from Sixtieth street to Sixty-first street, was taken out on May 18, 1897, and the work of construction was subsequently carried on contemporaneously upon all the buildings upon both sides of that street.    When the cellars had been dug and the foundations prepared for all the houses fronting on Reinhard street work was commenced upon the houses fronting on the north side of Upland street, the lots upon which said houses stood extended back to and adjoined those connected with the houses fronting on the south side of Reinhard street, and work subsequently proceeded at the same time upon all the houses involved in the entire operation.    Hughes became financially embarrassed and by deed dated November 1, 1897, and recorded on the 15th day of the same month, reconveyed the entire property to Prettyman, under whose ownership the erection of the one hundred and thirty-two buildings, forty-five on the north side of Reinhard street, forty-four on the south side of that street and forty-three on the north side of Upland street, was completed.

The rights of the parties are to be determined as of the time when Kline, the contractor, commenced the work and the plaintiffs the delivery of the materials.    Was Reinhard street at that time a public street?    It had never been opened to the the public and used as a street, and if it is held to be such it can only be because of the manner in which the parties had in

this transaction dealt with the property.   Dennis had acquired
no right in the property, he was a mere man of straw, and held
for Prettyman.   If Reinhard street had become a public highway
it was because of the covenants in the agreement between
Prettyman and Hughes of January 2, 1897.   Prettyman,
who owned the entire tract, covenanted, by that agreement, to
convey one hundred and forty lots to Hughes, according to
the plan which called for a frontage upon Reinhard street.   The
execution of this agreement would vest in Hughes the fee in
the land covered by the street, with the private right to have
the street left open forever, as a way appurtenant to the lots,
without regard to whether any right was by the plotting and
conveyance vested in the public: Kirkham v. Sharp, 1 Whar-
ton, 323; Cope v. Grant, 7 Pa. 488; Transue v. Sell, 105 Pa.
604; Woodward v. Pittsburg, 194 Pa. 193.   The conveyance,
in addition to the covenants necessarily implied as between the
parties and those claiming under them respectively, inciden-
tally involved a tender to the public of an easement for the
street as a public highway; this did not however of itself make
the street a public highway; see authorities cited in Carroll v.
Asbury recently decided by this court.   The mere dedication
of a street to public use by the owner will not make it a public
street unless it is opened to and accepted by the public.   When
such a street has been opened it may be accepted by the
municipal authorities, or by a public user, without the active
intervention of the municipal authorities: Commonwealth v.
Moorehead, 118 Pa. 344; Commonwealth v. Shoemaker, 14 Pa.
Superior Ct. 194.   The street must be opened in such a case,
after it has been dedicated, in order to constitute it a public
highway: Commonwealth v. Royce, 152 Pa. 88; Woodward v.
Pittsburg, 194 Pa. 193.   There was in this case no evidence
from which a jury ought to have been permitted to find that
the street had been opened before the plaintiffs commenced to
deliver materials to the building operation, and the acceptance
of the highway by a public user is, therefore, out of the ques-
tion.   There was no acceptance of the dedication by the
municipal authorities until long after the rights of the plaintiffs
had accrued.   When the plaintiffs commenced to deliver
materials to this operation, Reinhard street, as located on the
plan, was a mere cul de sac, there can be no pretense that it

did or could have extended "from street to street as a thoroughfare." The parties had the power to make whatever contracts they saw fit with regard to the private rights appurtenant to the lots upon the plan, but it was beyond their power to fix upon the strip of land over which Reinhard street was located, the character of a public street. The special act of assembly entitled "An Act Relative to Plans of Survey and Regulation in the City of Philadelphia," approved June 6, 1871, sec. 3, P. L. 1353, provides that: "No street shall hereafter be added to any confirmed plan of the City of Philadelphia, and called a public street, until the same shall have been approved by the Board of Surveyors as to location, width and grades, and shall. extend from street to street as a thoroughfare." The existence of this provision no doubt accounts for the fact that Prettyman delayed any attempt to procure an acceptance of the dedication by the municipal authorities until after the plaintiffs had for a considerable period been furnishing materials upon the credit of the building operation. When the work was commenced Reinhard street was a private way appurtenant to the lots, not a public street, and not such a severance of the property as to prevent an apportionment of the mechanic's lien amongst all the houses involved in the building operation: Taylor v. Montgomery, 20 Pa. 443; Fitzpatrick v. Allen, 80 Pa. 292; Kline's Appeal, 93 Pa. 422; Atkinson v. Shoemaker, 151 Pa. 153; Gordon v. Norton, 186 Pa. 168.

The contention of the appellant that 105 of the houses were erected under one contract, and the other twenty-seven under a separate and distinct contract, was settled by the verdict. That only 105 of the houses were erected upon lots embraced in the original contract is true. No houses were erected on the thirty-five lots fronting on the south side of Upland street, which were included within the provisions of the original contract. Twenty-seven houses were erected upon the land which Prettyman purchased after the original operation had commenced. The parties entered into no written agreement with regard to the twenty-seven houses thus erected upon the land next to Sixty-first street. The evidence as to the agreement under which those houses were erected was oral and conflicting. The testimony of Prettyman might have warranted a finding that the original written agreement was so modified as to provide

for the erection of 175 houses, but it is by no means clear or satisfactory as to whether he was to advance any additional money upon account of the additional thirty-five houses. The testimony of Hughes, which was to some extent corroborated, warranted a finding that the original agreement was so modified as to eliminate thirty-five houses which were to have been erected on the south side of Upland street and substitute for that part of the work the twenty-seven houses erected upon the end of the property next to Sixty-first street, thus providing for the erection of the 132 houses actually built. The disputed question of fact was fairly left to the jury, which found for the plaintiffs. The case thus presents not the making of a new and independent contract, but the modification of an existing one. No conflicting rights of other parties having any interest in the property was involved. The parties had reduced their original contract to writing, but they were free by a new contract, not in writing, either to waive, annul, or modify the former agreement, in any manner which involved no invasion of the rights of others, and thus to make a new contract; to be proved partly by the written agreement and partly by the subsequent terms ingrafted upon it: Carrier v. Dilworth, 59 Pa. 406; McNish v. Reynolds, 95 Pa. 483; Green v. Paul, 155 Pa. 126; Dreifus v. Columbian Exposition Salvage Co., 194 Pa. 475. The alteration of the written contract by parol made the whole contract parol; the terms of the written contract being in effect adopted and becoming a part of the parol agreement. The terms of the parol agreement were, under the conflicting evidence, a question for the jury.

The judgment is affirmed.