## Commonwealth v. Myers et ux.

*William F. Marston*, assistant district attorney, for Commonwealth.

*James D. Flower*, solicitor for Monroe Township Supervisors, for private prosecutor.

*Robert L. Myers, Jr.*, for defendants.

SHUGHART, P. J., October 29, 1954.—An information was filed on February 27, 1953, by one of the Supervisors of Monroe Township, charging that defendants, on or about 1951, "did construct, open and dedicate roads, and drainage facilities in connection therewith, for public use and travel . . . without first

submitting plans thereof to the supervisors . . . for approval, and without recording any plan of said roads. . . ."

A hearing before the justice of the peace was waived and the case was returned to court. Thereafter, with the consent of the court, defendants waived indictment and trial by jury. The testimony taken in the trial before the court was transcribed, and the matter has been argued and is now before us for decision.

From the testimony it appears that defendants became the owners of a farm in Monroe Township, Cumberland County, Pa., sometime in early 1945. On June 7, 1945, they acknowledged a plan of lots covering a portion of the farm, which plan shows a 50-foot right-of-way, which is the basis of the present proceedings. The plan is on record in the office of the recorder of deeds. When defendants bought the farm, a portion of it fronted on Trindle Road; running parallel to Trindle Road there was a lane approximately 30 feet wide that was used by defendants' predecessors to move farm machinery and produce from the farm land to the buildings. The right-of-way on the plan, and presently in question, is in approximately the same location as the old lane. On the plan, however, the right-of-way was widened to 50 feet. Neither the plan of lots nor any plan of the road was submitted to the Supervisors of Monroe Township. After they acquired the farm, defendants sold off lots which fronted on Trindle Road and extended in depth to the right-of-way in question. They also sold approximately 13 lots that are described as fronting on the 50-foot right-of-way; the latest sale referred to having occurred in 1948.

Section 1140 of the Second Class Township Law, as amended by the Act of July 10, 1947, P. L. 1481, 53 PS §19093-1140, provides, inter alia, that "No person shall construct, open, or dedicate any road, . . .

for public use or travel in any township, without first submitting plans thereof to the township supervisors for their approval." Section 1144 of the same act provides the penalty for violation of section 1140.

It is admitted here that no plan was submitted to the supervisors. The evidence adduced by the Commonwealth fails to show the construction of any road. The only evidence from which it could be found that defendants opened or dedicated the road for public use is that furnished by the recording of the plan and the sale of lots with reference thereto. Except for testimony that some trucks used the road for a few days when the Trindle Road was closed, the road was exclusively used by the people who built on lots abutting on it and their business and social invitees.

The original lane and the present right-of-way connect with a public road at only one terminus; the other terminus is in the field of defendants. The right-of-way has never been given a proper name which is so common in plans of lots but is simply referred to as a "50-foot right-of-way." This is the same terminology used in the deeds conveying land abutting on the way. Neither the plan nor the deeds state whether the right-of-way is public or private.

It is well settled that where an owner of land subdivides it into lots and streets on a plan and sells lots therefrom, there is an implied grant or covenant *to the purchaser* that the streets shall be open to the use of the public and operates as a dedication of them to public use: Rahn v. Hess, 378 Pa. 264, 268. However, in order for such a dedication to become a public highway, there must be an acceptance, express or implied: Philadelphia Electric Co. v. Philadelphia, 303 Pa. 422, 432.

"An acceptance must be shown by some definite authoritative act of the municipality (Grant v. Dickson City Borough, 235 Pa. 536; Steel v. Huntingdon

Borough, 191 Pa. 627, 629, 630; Wahl v. McKees Rocks Borough, 64 Pa. Superior Ct. 155), or by long continued use by the public as a way (Ackerman v. Williamsport,. 227 Pa. 591), or by a combination of municipal acts and public uses: Kniss v. Borough of Duquesne, 255 Pa. 417; Milford Borough v. Burnett, supra, (288 Pa. 434)": Philadelphia Electric Co. v. Philadelphia, 303 Pa. 422, 432.

In this case there has been no municipal action which could be deemed an acceptance; acceptance must, therefore, be found from use. In the Philadelphia Electric Co. case, supra, the court said, at page 432:

"The use of the street that would make it a public highway must be a public use and not a private one by lot owners. The use in this case by the lot owners was not public and, as such, would not be sufficient to constitute an acceptance." See also Fleck v. Collins, 28 Pa. Superior Ct. 443.

It is clear from the testimony that there has been no greater use of this way than there would have been had it been a private right-of-way for the use of the abutting lot owners. There has been no general use by the traveling public from which an acceptance for public use could be implied.

Even if placing the right-of-way on the plan and selling lots with reference thereto, alone, constituted a dedication or opening of a road, the prosecution could not be sustained. The offense charged is a misdemeanor and, therefore, prosecutions must be brought within two years after the commission of the offense: Act of April 6, 1939, P. L. 17, sec. 1, 19 PS §211. The plan was acknowledged and recorded in 1945 and the last lot sold with reference thereto in 1948, neither of which date is within the statutory period.

We are unable to agree with counsel for the township supervisors that either of these acts could be deemed continuing acts so as to bring them within the

statutory period. It appears to us that one test to apply to determine if an act is continuing is whether the actor could terminate his activity at any time. In the case of a continuing trespass by the discharge of water upon the lands of another, the trespasser can, at any time, stop the trespass by diverting the water away from the injured land owner. Here the recording of the plan and the sale of each lot were separate acts, complete within themselves, and completed on execution.

"In all such cases there must be continued action— something to be done in the future to forward the criminal purpose — otherwise there is no continuing crime": 15 Am. Jur. 34, §345. It is abundantly clear that after the recording of the plan and the execution and delivery of the various deeds there was nothing to be done in respect thereto in the future. They cannot be deemed continuing acts.

We are aware of the general purpose of the statute under consideration. A laudable purpose cannot, however, impel a court to give a strained construction to the plain wording of a statute. If it was the intent of the legislature that the filing of a plan with streets or rights-of-way noted thereon and the sale of lots with reference to such a plan should subject the person doing so to a criminal penalty, it could have easily said so.

The statute under which this prosecution was brought is highly penal in nature and must, therefore, receive a strict construction: Commonwealth v. Strand, 86 D. & C. 393, 397. We are satisfied that there has here been no construction, opening or dedication of a public road in this case as contemplated by the statute under consideration.

It should, perhaps, be pointed out that we are not here concerned with the respective rights of defendants and those to whom they sold lots, nor are we concerned

150

with the right of the township authorities to open the road as a public road without payment of damages to defendants. These matters must be decided when they are brought before us. The decision in this criminal proceeding should not be considered as determinative of those issues.

Judge Garber took no part in the deliberations or decision in this case.

And now, October 29, 1954, at 9:30 a.m., for the reasons given, we find defendants not guilty. Costs to be paid by the County of Cumberland.